## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TENISHA FELIO, individually, and JOHN E. TOMLINSON, as Administrator of the Estate of James Edward Felio (on behalf of Tenisha Felio and the minor children of James Edward Felio and Tenisha Felio), | ) ) ) ) ) ) ) **CIVIL ACTION FILE NO. 12-cv-04186-ODE** |
|            Plaintiffs, | ) ) **PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | ) ) |
| CHRISTOPHER HYATT, individually, and in his capacity as a police officer for the City of Lawrenceville, Georgia, KARL HYDRICK, individually, and in his capacity as a police officer for the City of Lawrenceville, Georgia, the CITY OF LAWRENCEVILLE POLICE DEPARTMENT and the CITY OF LAWRENCEVILLE, Georgia, | ) ) ) ) ) ) ) ) ) ) ) ) |
|            Defendants. | ) ) ) |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW Plaintiffs, by and through undersigned counsel, and hereby amend their Complaint against Defendants, showing the Court as follows:

EXHIBIT "A"

## INTRODUCTION

### 1.

This is a 42 U.S.C. §1983 action brought under the Fourth and Fourteenth Amendments to the United States Constitution arising from the Defendant City of Lawrenceville's failure to train, manage, and supervise the individual Defendants, and police officers' unreasonable, intentional and malicious use of deadly force against Plaintiffs' decedent husband and father, James Edward Felio. Plaintiffs also assert pendant state law claims of wrongful death, negligence, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, false arrest, false imprisonment, and violation of the Georgia Constitution against all Defendants.

## JURISDICTION AND VENUE

### 2.

This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343, and the aforementioned constitutional and statutory provisions. Plaintiffs further invoke the pendant or supplemental jurisdiction of this Court to decide the claims arising under state law pursuant to 28 U.S.C. § 1367.

**3.**

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and N.D.L.R. 3.1b(3) because the event giving rise to this claim occurred in Gwinnett County, Georgia, which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia.

**4.**

All of the parties herein are subject to the jurisdiction of this Court.

**PARTIES**

**5.**

Plaintiffs are citizens of the United States and residents of Gwinnett County, Georgia.

**6.**

Defendant Christopher Hyatt is an individual residing at 3742 Woodruff Ridge Lane, Loganville, Georgia 30052, and who was, at all times relevant herein, a police officer employed by the City of Lawrenceville who acted within the scope of his employment by and pursuant to the policies and procedures of the City of Lawrenceville Police Department.  Defendant can be served with summons and a copy of this Complaint at the above-listed address.

3

**7.**

Defendant Karl Hydrick is an individual residing at 1134 Saint Andrews Circle, Atlanta, Georgia 30338, and who was, at all times relevant herein, a police officer employed by the City of Lawrenceville who acted within the scope of his employment by and pursuant to the policies and procedures of the City of Lawrenceville Police Department.  Defendant can be served with summons and a copy of this Complaint at the above-listed address.

**8.**

Defendant City of Lawrenceville is a corporate entity chartered by the State of Georgia and which does employ persons who work for the City of Lawrenceville Police Department. Defendant can be served by delivering a summons and copy of this Complaint to the City Attorney, V. Lee Thompson, Jr., at 690 Longleaf Drive, Lawrenceville, Georgia 30046.

**9.**

Defendants Hyatt, Hydrick, and the City of Lawrenceville Police Department, at all times relevant herein, acted under color of state law and on behalf of the City of Lawrenceville, Georgia.

4

## FACTUAL ALLEGATIONS

### 10.

During the early morning hours of December 11, 2010, Tenisha Felio called the 911 operator to have police officers sent to the home she shared with her husband, James Edward Felio ("James Felio"), at 707 Charleston Court, Lawrenceville, Gwinnett County, Georgia.

### 11.

Tenisha Felio called 911 because of a domestic dispute with her husband.

### 12.

Lawrenceville Police Department dispatched two of its police officers, Christopher Hyatt ("Hyatt") and Karl Hydrick ("Hydrick") to the Felio home.

### 13.

Upon arriving at the Felio home, Defendants Hyatt and Hydrick were met by Tenisha Felio who told Defendants that her husband was upstairs in their house asleep.

### 14.

Based upon his initial statement to Gwinnett County Police investigators, Defendant Hyatt said that he did not see any signs of injury on Tenisha Felio.

**15.**

Neither Defendant Hyatt nor Defendant Hydrick obtained any written statement from Tenisha Felio as required by the City of Lawrenceville policy regarding establishing probable cause to arrest in conjunction with incidents of domestic violence.

**16.**

Defendants instructed Tenisha Felio to remove the couple's minor children from the house and Defendants would then go upstairs and confront James Felio.

**17.**

Tenisha Felio did as instructed and began, with the help of relatives, removing the minor children from the upstairs portion of the house and then out of the house.

**18.**

During the process of Tenisha Felio removing her children, Defendants Hyatt and Hydrick, approached James Felio and attempted to question him.

**19.**

At the time Defendants first approached James Felio, he was completely naked and still asleep in bed.

**20.**

Defendants, when first approaching James Felio, had already drawn a Taser for the purpose of using it on James Felio.

**21.**

Defendants found a pair of James Felio's pants in the bedroom, tossed the pants to James Felio and demanded that he put on the pants.

**22.**

After putting on his pants, James Felio sat back on the bed as instructed.

**23.**

After obeying Defendants' commands of putting on his pants and sitting back on the bed, Defendants began tasing and struggling with James Felio after they claim James Felio refused to answer their questions. Additionally, Defendants failed to obtain any written statement from Tenisha Felio.

**24.**

Defendant Hydrick fired his Taser device approximately ten (10) times into the body of James Felio. At the time that Hydrick used the Taser, neither Hydrick nor the City of Lawrenceville had complied with Taser International, Inc., nor the

City of Lawrenceville's, policy regarding proper training and re-certification to possess and use the Taser.

## 25.

At some point during the struggle, James Felio fell off the bed and onto the floor.

## 26.

At this time, Tenisha Felio saw James Felio prone and flat on the floor alone with both hands held up beside his head.

## 27.

At no time did James Felio ever gain control of Hydrick's gun. Specifically, James Felio never pulled or removed Defendant Hydrick's gun from its holster. James Felio had no weapon in either hand.

## 28.

While James Felio was on the floor and unarmed, Defendant Hyatt had pulled out his pistol, a .45 caliber pistol with hollow point bullets, and was pointing it at James Felio.

## 29.

Tenisha Felio screamed for Hyatt not to shoot James Felio because he was

not fighting Defendants, was on the floor with both hands up and did not have any weapons.

## 30.

Defendant Hyatt shouted at Tenisha Felio to stand back and Tenisha Felio followed the command and did not move.

## 31.

At the same time, Tenisha Felio saw Defendant Hyatt pointing his pistol at James Felio, she also saw Defendant Hydrick positioned up and away from James Felio and was on the floor with James Felio. Defendant Hydrick was not engaged in any fight or struggle with James Felio.  No part of James Felio's and Defendant Hydrick's bodies were touching.

## 32.

Tenisha Felio continued to scream for Defendant Hyatt not to shoot the unarmed James Felio. Notwithstanding Tenisha Felio's pleas and screams, Defendant Hyatt shot James Felio in the abdomen while James Felio was on the floor.

## 33.

After being shot, James Felio died shortly thereafter on his bedroom floor.

**34.**

While unarmed on the floor of his bedroom, and with both Defendants out of his reach, James Felio did not pose an imminent threat of death or serious bodily harm to Defendants or anyone else when he was shot in his abdomen by Defendant Hyatt.

**35.**

James Felio was unarmed and was no danger when he was shot and killed.

**36.**

At no time relevant herein did James Felio assault, threaten or otherwise endanger anyone so as to justify the use of deadly force against him by Defendants.

**37.**

Defendants' use of deadly force was intentional, unreasonable, and not justified. Defendants also acted maliciously with the intent to harm James Felio. Furthermore, Defendants failed to follow acceptable, reasonable and standard police practices and procedures with regards to the use of force used on James Felio.

**38.**

Defendants may have acted with criminal intent and their decision to use

deadly force was unreasonable from the standpoint of what an objectively reasonable officer would have done.

**39.**

On December 11, 2010, Defendants Hyatt and Hydrick were required by Taser International, Inc., Georgia law, and the Defendant City of Lawrenceville to be trained and certified in order to possess and use the type of Taser used by Defendant Hydrick on James Felio on December 11, 2010.

**40.**

On December 11, 2010, Defendant Hydrick had not been certified to use the Taser in accordance with Taser International, Inc., Georgia law, and the Defendant City of Lawrenceville.

**41.**

At all pertinent times, the City of Lawrenceville, specifically the City of Lawrenceville Police Department, was charged with authorizing and approving the Taser training and Taser policy for Defendant City of Lawrenceville and its police department.

**42.**

Taser International, Inc. provided training materials to Defendants

11

City of Lawrenceville, Hydrick, and Hyatt.

## 43.

The Taser training materials recommended that the law enforcement agency develop sound policies regarding the use of Tasers.

## 44.

Defendants City of Lawrenceville, Hydrick and Hyatt were on notice of the need to establish department policies and procedures regarding use of the Taser against suspects and arrestees.

## 45.

Despite being on notice of the need to do so, Defendants City of Lawrenceville, Hyatt, and Hydrick failed to follow specific policies, procedures, and Georgia law regarding the use of the Taser against suspects and arrestees.

## 46.

At all pertinent times, it was the policy and practice of the City of Lawrenceville to permit its police officers to use a Taser against arrestees in appropriate situations after the police officers had been trained and the City of Lawrenceville had supervised and confirmed the training.

## THEORIES OF RECOVERY

### 47.

The aforementioned misconduct of Defendants toward James Felio constituted an unreasonable use of deadly force, and thus an unreasonable seizure of James Felio's person in violation of the Fourth Amendment of the United States Constitution.

### 48.

The law clearly establishes that a police officer may not use deadly force to apprehend an unarmed and nonviolent suspect, and no reasonable police officer would have believed that it was appropriate to use deadly force under the circumstances confronting Defendants; accordingly, Defendants are not entitled to qualified immunity for their objectively unreasonable use of deadly force in violation of the Fourth Amendment.

### 49.

The aforementioned acts and omissions of Defendants also constitute, at the very least, wrongful death, negligence, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, false arrest, and false imprisonment under Title 51 of the Official Code of Georgia Annotated, as well as

abuse during the course of an arrest on violation of Art. I,§ I, ¶ 17 of the Georgia Constitution.

**50.**

Because Defendants intentionally caused bodily harm under circumstances with no legal justification for doing so, Defendants are not entitled to official immunity under Georgia law.

**51.**

Defendant City of Lawrenceville failed to properly train and supervise Defendants Hydrick and Hyatt in the use of force and use of the Taser and the appropriate level of force to be used thereby contributing to the death of James Felio and damages to Plaintiffs.

**52.**

Defendant City of Lawrenceville admitted it failed to properly train and supervise Defendant Hydrick with regards to the use of the Taser prior to December 11, 2010. Captain Timothy Wallis of the City of Lawrenceville, who was designated as Defendant City of Lawrenceville's O.C.G.A. § 9-11-30-(b)(6) witness stated:

Q.    And Officer Hydrick in 2010 or at least in on December
      11th, 2010, he would have been using the X26; is that
      correct?

A.    That is correct.

Q.    Okay. I believe that you said that - that the training that's
      provided by Lawrenceville is similar to the training that is
      required by Taser; is that right?

A.    It's not similar. It's the exact training because it's a
      PowerPoint presentation that Taser puts out.

Q.    Okay. All right, And is the certification to carry a Taser, is
      it yearly. Is it an annual certification?

A.    No, sir. The Taser itself, when you go through the
      certification, you're good, they say, okay, you can carry it
      once you pass the practical and the written and written test.
      Taser recommends that you have annual training with the
      officers to continue their education on it.

Q.    In fact, Taser does recommend yearly training, doesn't is?

A.    They do.

Q.    Okay. But the  - but the City does not.

A.     No.

Q.     Okay. After you do the initial training of that officer, that officer is not requires to come back to you for additional training; correct?

A.     We will do it biannually, so we'll do it in a couple of years.

Q.     All right.  But it's not -- is it a requirement.

A.     Yes, sir, it is.

Q.     I guess my question is, it's not required that there will be yearly updates in training for the City of Lawrenceville police officers for the use of the Taser; correct.

A.     Correct.

Q.     All right.  Taser does, Taser recommends it, but the City doesn't do it?

A.     Correct.

Q.     All right.  And nothing really happens to the officer? For example, if Taser requires annual recertification or training, nothing really happens to the officer if annual training is not done within the apartment?

A.     That's correct.

Q.    Right. But if there's no specific recommendation that a
      particular officer come in ,that officer is not bound by any
      policy to come in and to train on a yearly basis; correct?

A.    Not on a yearly basis.  That's correct.

Q.     So would it be fair to say that the department really doesn't
      have  a policy requiring annual Taser certification and
      recertification on its officers?  I'm not talking about the
      instructors  but just the officers.

A.    It does not have a annual, no, sir.

Q.    Okay. Is -- do you know if on December 11th, 2010, Officer
      Hydrick had been recertified for the use of his Taser?

A.     I do not know as far as recertification.

Q.    I'm going to tell you something and see if you can explain to
      me why it is what it is. I'm looking at Sergeant Hydrick's
      P.O.S.T.  report, his P.O.S.T. record, and I'm looking at
      page 2 of that report.

Q.     (By Mr. Dearing)  Captain, I'm looking   at Officer
      Hydrick's  P.O.S.T. report.

A.    Uh-huh.

17

Q.    And I'm looking at the entry at date May1st, 2008, Taser electrical device and then later, July 21, 2011, Taser electrical device.  Does that mean that he did not receive any training on the Taser for about three years?

A.    That he received P.O.S.T. credit for, that's correct.

Q.    (By Mr. Dearing)  Captain, I'm going to give you what's been marked as Exhibit 4, but before -- and you can look that over, if you like. We were reading at page 2, and I'm going to ask our court reporter to read back my last question to see where I kind of left off.  (The record was read as requested.)

Q.    (By Mr. Dearing)  And the P.O.S.T. credit is because you said that the Taser training is exactly the same as the departmental training or the departmental training is the same as the Taser training.  Does that mean, then, that the only training he received was what's listed here on this P.O.S.T. report?

A.    Yes, sir.

Q.    Okay.

A.    A lot of times, if I may expound --

Q.    Sure.

A.    -- when we're teaching at the firing range, we teach a myriad of things out there. I mean, it may include intermediate weapons and such.

Q.    And so for example, between that time -- and I guess what you're saying is, between May of 2008 and July of 2011, you -- you very well may have given some instruction to the officers involving the Taser --

A.    That's correct.

Q.    -- that's not listed in -- on P.O.S.T. or anything maybe that you have even departmentally?

A.    Correct.

Q.    Okay.  But it's -- but --

A.    Normally it's in a structured situation where it would be training, but it may include out in the firing range or something along that.

Q.    But we can't say that that, in fact --

A.    That's correct.

Q.     -- happened for sure?

A.     Correct.

Q.     So we don't know if it -- I mean, ideally that would be good,

       but -- and ideally that happens or sometimes that happens,

       but we can't say -- here today you can't testify that other

       than the entries that we see on this exhibit that Karl

       Hydrick actually received training on the Taser between

       those time periods?

A.     That's correct.

Q.     And if -- if we look at it based on what we have here in this

       exhibit, Karl Hydrick arguably even before December 11th,

       2010, had not received any training on the Taser, at least

       that is documented that we can look at here, for at least

       two years prior to that; correct?

A.     Correct.

MR. DEMPSEY:  Object to the form and the math.

Q.      (By Mr. Dearing)  Okay.  The math may be a little wrong,

       but we can't say that anytime between May 1st, 2008, and

December 11th, 2010, that Karl Hydrick received any

training on the Taser;  correct?

A.   That is formally documented in his P.O.S.T. records --

Q.   Correct.

A.   -- correct.

Q.   And to an objective, outside party, the only thing they could

look at to determine what training that he received that's

memorialized is in either P.O.S.T. records or some

departmental records; correct?

A.   Correct.

Q.   So let's assume for a moment -- and I don't know.  You tell

me.  May 1st, 2008, for Karl Hydrick, was that

recertification?

A.   Looking at the eight hours, I would say that that was his

initial certification with the X26.

Q.   Okay.  And with regard to that, then, if you look at May 1st,

according to you, if May 1st is is initial certification with the

Taser, then his recertification would have taken place in

May of 2010; is that correct?

21

A.    That is correct.

Q.    And there was none; correct?

A.    Right.  It doesn't have to be specifically that month, but it would -- should have been done.

Q.    Certainly we don't see anything -- I mean, tell me.  I don't see anything within the two-year period.

A.    That's correct.

Q.    All right.  So that means that under your policy that -- or under what you just -- you told me about that recertification should take place every two years for an officer; correct?

A.    Correct.

Q.    Under this P.O.S.T. transcript, it appears that Officer Hydrick did not, in fact, have recertification even on the X26 within the two-year period; correct?

A.    Correct.

Q.    Okay.  So would it be fair to say that Officer Hydrick was -- was handling a Taser without proper recertification as of December 10th --December 11th, 2010?

A.    Correct.  I mean, the recertification --

Q.    Let me make sure I -- let me make sure I understand you.
      That is -- you said correct?

A.    Correct.

Q.    Okay.  So that is correct?  He was not -- he was not properly
      recertified when he was handling the Taser on December
      11th, 2010; correct?

A.     He was -- hadn't had the training in our policy biannually,
      so he had not had his two-year policy training.

Q.    So he was -- so he was operating a Taser, a departmental
      Taser, without proper recertification; correct?

A.    Correct.

Q.    All right. Go ahead.  I'm sorry.  You were going to
      explain.

A.    The certification and the  recertification are basically two
      different things. It's like when we went to the X2, it's a
      shorter block, as you see here on his transcript.  A lot of
      it's done online, and then a lot of it is done just in the
      practical exercise there.

Q.   But even though you say the certification and the

recertification are a little different, he hadn't had anything,

though; right?

A.   Evidently not, correct.

Q.   Okay.  All right.  And that is -- that is something that the

department, I'm assuming, monitors?

A.   Should, yes.

Q.   Okay.  But it didn't?

A.   Evidently not, if it's not showing on

his P.O.S.T. transcript.

Q.   All right.  And in that situation the department certainly

would want people who have been properly trained and

taught how to use the Taser operating the Taser out in

public; correct?

A.   Correct.

Q.   And if there was no training for a long period of time

beyond a two-year period as far as recertification, that is a

lapse in training or a mistake or a clerical error or

something, but it's

A.     Correct.

Q.     All right.  And it is your opinion -- would it be your opinion

       based on what I've shown you that with regard to Officer

       Hydrick, based on what you know and what you've testified

       to, that the department simply did not adequately review

       his records or missed this training?

A.     Correct.

Q.     You said there might have been some training done in

       conjunction with other things, but that's not properly -- no

       record could -- could ever be --

A.     Correct.

Q.     -- produced that would show that; correct?

A.     Correct.

Q.     All right. And you said that you don't believe that

       it was Officer Hydrick's fault but more the department's

       fault for not keeping up with when his training should have

       taken place with regard to the Taser?

A.     I believe it's the burden of the training department to

       adhere to their policies in training.

**Q.**     Okay.  And that would have been the police department; correct?

**A.**     And part of it would have lain with the training department.

**Q.**     And who?

**A.**     The training department.

**Q.**     Right. Every two years you're supposed to do it, but obviously, I think you said that because it didn't happen with Officer Hydrick, something was missed because there was not -- someone wasn't looking or something got missed?

**A.**     Correct.

**(Wallis Depo., pgs. 14-41)**

Therefore, Defendant City of Lawrenceville's failure to train and supervise subjects it to liability.

**53.**

Because of its negligence, Defendant City of Lawrenceville is not entitled to immunity.

**54.**

As a direct and proximate result of the combined actions and inactions of all the Defendants, James Felio suffered a battery, gunshot would, and death.

## CAUSES OF ACTION

### Count One
**(Failure to Follow a Ministerial Duty and Use of Excessive Force by Defendants Hyatt and Hydrick)**

**55.**

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 54 as if fully set forth herein.

**56.**

Defendants Hyatt and Hydrick failed to follow required and absolute rules and policies of the City of Lawrenceville relating to obtaining written victim/witness statements in domestic violence matters. Specifically, City of Lawrenceville's Department Operations Manual states:

> **When probable cause is based solely on the verbal account of a victim or witness, no charges shall be made unless a signed written statement is obtained.**[1]

**57.**

The use of force chosen and employed by Defendants Hyatt and Hydrick was not objectively reasonable under the circumstances, including but not limited

---

[1] Lawrenceville Police Department Operations Manual, Chapter 4 (General Procedures), Article 8 (Domestic Violence), Section 4.8.4 (A)(3); Guidelines (Arrest).

to the fact that James Felio was unarmed, never obtained a weapon, was naked when confronted, had complied with earlier commands, had been awaked from a deep sleep, posed no threat to Defendants or others, and was at a minimum, passively resisting their commands.

**58.**

The use of force employed by Defendants Hyatt and Hydrick was not objectively reasonable under the circumstances and revealed by Defendant Hyatt's decision to shoot James Felio instead of using other less lethal devices such as pepper spray or even a metal baton.

**59.**

The use of force employed by Defendants Hyatt and Hydrick deprived James Felio of his federal constitutional rights against excessive force arising under the Fourth and Fourteenth Amendments of the United States Constitution, and proximately caused James Felio's unwarranted pain, suffering, and death.

**60.**

The force used by Defendants Hyatt and Hydrick against James Felio was exerted for the improper purpose of obtaining James Felio's passivity, submissiveness, and/or punishment, and thereby deprived James Felio of his

federal constitutional rights arising under the Fourth and/or Fourteenth Amendments of the United States Constitution, and proximately caused James Felio's unwarranted pain, suffering, and death.

**61.**

The use of force employed by Defendants Hyatt and Hydrick constituted excessive force in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution, and proximately caused James Felio's unwarranted pain, suffering, and death.

**COUNT TWO**
**(Supervisor Liability of Defendant City of Lawrenceville)**

**62.**

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

**63.**

The use of force employed by Defendants Hyatt and Hydrick was representative of Defendant City of Lawrenceville's use of unconstitutional, excessive force with Tasers against suspects and arrestees.

**64.**

As supervisor, Defendant City of Lawrenceville was on notice to establish departmental policies and procedures concerning the use of the Taser against a suspect ad arrestee and to provide the training recommended by Taser International, Inc.

**65.**

As supervisor, Defendant City of Lawrenceville was on notice to provide Taser training and policy such that officers would not be in possession of the Taser without proper training.

**66.**

Defendant City of Lawrenceville failed to provide training and supervision regarding the use of the Taser used by Defendant Hydrick on December 11, 2010.

**67.**

Defendant City of Lawrenceville's failures and omissions constitute deliberate indifference to the constitutional rights of James Felio.

**68.**

Defendant City of Lawrenceville's failures and omissions proximately caused the unwarranted pain, suffering, and death of James Felio, and it is thereby liable.

## COUNT THREE
### (Liability for Policy and Custom)

**69.**

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 68 as if fully set forth herein.

**70.**

Defendant City of Lawrenceville provided inadequate training and supervision to Lawrenceville police officers for the use of the Taser against suspects and arrestees, and thereby exhibited deliberate indifference to the constitutional rights of citizens, including James Felio.

**71.**

Defendant City of Lawrenceville was the final policymaker for the police department's use of the Taser.

**72.**

As a direct and proximate result of the failures and omissions of Defendant City of Lawrenceville, James Felio was deprived of his federal constitutional rights arising under the Fourth and Fourteenth Amendments of the United States Constitution to be free from excessive force, and James Felio suffered unwarranted unwarranted death.

31

**73.**

Defendant City of Lawrenceville's policy, lack of training and supervision was the moving force behind the constitutional deprivation of James Felio.

## COUNT FOUR
### (Negligence and State Law Claims)

**74.**

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 73 as if fully set forth herein.

**75.**

Defendant City of Lawrenceville was responsible for enacting policies and procedures for establishing use of force, probable cause to arrest and use of the Taser on suspects and arrestees, and for training its police officers according to proper official guidelines.

**76.**

Several of the responsibilities are ministerial duties for which violations constitute liability.

**77.**

Defendants Hyatt and Hydrick violated their ministerial duties to properly establish probable cause to arrest. Defendant City of Lawrenceville violated its

ministerial duty regarding the proper and authorized use of the Taser on suspects and arrestees, and for training and supervising its police officers accordingly.

**78.**

Defendants Hyatt and Hydrick were negligent in performing and/or failing to perform certain ministerial duties, as well as actions that were extreme, reckless, outrageous, and harmful including but not limited to the following:

(a)     Obtaining a written statement from Tenisha Felio in order to establish probable cause to arrest;

(b)     Failure to use only force which was necessary to seize and arrest a person without undue harm and/or death;

(c)     Utilizing the Taser repeatedly and excessively against James Felio when it was not warranted;

(d)     Failure to comply with specific guidelines which required training on the use of the Taser;

(e)     Being in possession of the Taser without proper training; and

(f)     Acting in an outrageous manner intended to cause fear and anxiety.

**79.**

Defendants were acting within the scope of their employment during said

acts and omissions.

### 80.

The aforementioned negligent acts and omissions were the proximate cause of pain, suffering, and the wrongful death of James Felio.

## INJURIES, DEATH AND COMPENSATORY DAMAGES

### 81.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 80 as if fully set forth herein.

### 82.

As a proximate result of the incident and the conduct of Defendants as described above, James Felio suffered severe emotional trauma, mental anguish, pain, and an untimely death, and the Plaintiffs are subject to resulting funeral and burial expenses exceeding $8,000.00.

### 83.

By reason of the foregoing, Defendants are liable to Plaintiffs for the value of James Felio's life, his pain and suffering in advance of death, and for the reasonable value of the expenses incurred by virtue of his funeral and burial.

**84.**

By reason of the foregoing, Defendants are liable to James Felio's estate, his spouse, and his minor children for the wrongful death of James Felio, for the full value of his life, as measured by the laws of the State of Georgia.

## PUNITIVE DAMAGES AGAINST ALL DEFENDANTS

**85.**

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 84 as if fully set forth herein.

**86.**

As evidenced by the facts set forth above, all Defendants' acts, omissions, and conduct against James Felio were reckless and callously indifferent to James Felio's federal and state protected rights.

**87.**

By reason of the foregoing, these Defendants are liable to Plaintiffs for punitive damages, in an amount as determined by the enlightened conscience of a fair and impartial jury.

## ATTORNEY'S FEES

### 88.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 87 as if fully set forth herein.

### 89.

As evidenced by the facts set forth above, all Defendants' acts, omissions, and conduct against James Felio violated his federally protected rights.

### 90.

By reason of the foregoing, these Defendants are liable to Plaintiffs for costs and expenses of this action, including reasonable attorney's fees as authorized by 42 U.S.C. 1983 §§ and 1988.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief that:

(a)   Plaintiffs have a trial by jury;

(b)   Plaintiffs have granted to them a judgment and recover from

Defendants, jointly and severally, compensatory damages for the

value of the life of James Felio, his pain and suffering, and his death,

in such amounts as are determined by the enlightened conscience of a

fair and impartial jury, as well as expenses in excess of $8,000.00

incurred by virtue of his funeral and burial;

(c)     Plaintiffs' surviving minor children and sole heirs of James Felio,

have and recover from Defendants, jointly and severally, an amount

expressed in monetary terms of equaling the full value of the life of

James Felio, without deduction for expense or necessaries had he

lived, and in such amounts as are determined by the enlightened

conscience of a far and impartial jury;

(d)     Plaintiffs recover punitive damages from all Defendants for their use

and authorization of unconstitutionally excessive force and breach of

ministerial duties against James Felio;

(e)     Plaintiffs recover both compensatory and punitive damages against

Defendants for those state law claims proven at trial; and

(f)     Plaintiffs have such other and further relief as this Court deems just

and proper.

This 3rd day of March, 2014.

Respectfully submitted,

"s/ Max Richardson, Jr .
Max Richardson, Jr.
Georgia Bar No. 604080
Heather L. McPhillip
Georgia Bar No. 116109
2024 Beaver Ruin Road
Norcross, Georgia 30071
Tel: (770) 209-7999
Fax: (770) 209-0033
Email: attorneymax@aol.com
Email: hmcphillip@hotmail.com


"s/ James E. Dearing, Jr.
James E. Dearing, Jr.
Georgia Bar No. 215090
730 Peachtree Street, N.E.
Suite 560
Atlanta, Georgia 30308
Tel: (404) 870-0010
Fax: (404) 870-0008
Email: jdearing@jed-law.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing, **PLAINTIFFS' FIRST AMENDED COMPLAINT**, has been filed with the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants.

This 3rd day of March, 2014.

/s/ Max Richardson Jr.
MAX RICHARDSON JR.
Georgia Bar No. 604080
HEATHER L. MCPHILLIP
Georgia Bar No. 116109
2024 Beaver Ruin Road
Norcross, Georgia 30071
Tel: (770) 209-7999
Fax: (770) 209-0033
Email: attorneymax@aol.com
Email: hmcphillip@hotmail.com

/s/ James E. Dearing Jr.
James E. Dearing, Jr.
Georgia Bar No. 215090
730 Peachtree Street, N.E.
Suite 560
Atlanta, Georgia 30308
Tel: (404) 870-0010
Fax: (404) 870-0008
Email: jdearing@jed-law.com
*Attorneys for Plaintiffs*